## TAYLOR et al. v. BURLESON et al.

### No. 9436.

Court of Civil Appeals of Texas. Galveston.

May 7, 1930.

Rehearing Denied June 5, 1930.

A. E. Masterson, of Angleton, and Cantey Hanger & McMahon and F. T. Denny, all of Fort Worth, for appellants.

Follett, Evans & Hill, of Angleton, for appellees.

LANE, J.

In April, 1918, A. S. Burleson and Jefferson Johnson, residents of Travis county, Tex., were the joint owners of a certain 3,655 acres of land in Brazoria county, Tex., upon which there was growing certain live oak, pin oak, and ash trees.

B. L. Waggoman, a resident of Tarrant county, Tex., and James T. Taylor at the time mentioned each owned 50 per cent. of the stock of the Texas Hardwood Company, a corporation, the business of which was to mill timber into lumber.

On the ——— day of April, 1918, A. S. Burleson and Jefferson Johnson, styled parties of the first part, and B. L. Waggoman and James T. Taylor, styled parties of the second part, entered into a written contract, the pertinent parts of which are as follows:

"1. That parties of first part agree that parties of second part may enter upon and remove the timber from a certain tract and parcel of land owned by parties of first part, in accordance with the terms and conditions hereinafter set out, said tract being described as follows: 3,655 acres, more or less, out of the Stephen F. Austin grant, situate on the east bank of the Brazos River in Brazoria County, Texas, no timber to be cut within 100 feet of the lake situate on said land.

"2. That all live oak trees from 12″ in diameter and up, of standard quality, are to cut clean from the place of beginning;

"3. That when the live oak has been exhausted, the pin oak and ash is to be used, as above stated, with the exception of stumps and knees;

"4. That parties of second part will pay parties of first part for all timber taken as herein provided for at the rate of $6.00 per M. log measure, to be made in accordance with standard log scale; that they will pay the same price for all stumps and limbs of trees used for ship knees, measurement of stump to be standard log scale measure, and to extend to the depth of the excavation made for blasting the stump. Payments for timber cut shall be made on the 15th day of each month for all timber used up to the 10th day of such month. It is agreed that $500.00 shall be deposited by parties of second part with parties of first part, as earnest money, and that said deposit shall be held intact until termination of this contract, when it shall be considered in making final settlement between the parties.

"5. That this contract shall continue in force for a period of two years from this date, and that parties of second part will cut a minimum of 1,500,000 feet of like oak each year, and as much more as their mill can consume."

On the 9th day of July, 1919, A. S. Burleson and Jefferson Johnson instituted this suit against B. L. Waggoman and James T. Taylor, in Brazoria county, Tex.

In their petition the plaintiffs alleged the execution of the contract and made it a part thereof; they alleged that defendants by said contract had agreed to cut a minimum of 1,500,000 feet of live oak each of the two years for which the contract was to run, and as much more as defendants' mill could consume; that defendants entered upon said land and cut and removed therefrom and converted to their own use a large quantity of live oak timber and stumps and limbs, and other timber, the exact quantity of which is unknown to plaintiffs, but that they have reason to believe that such timber, stumps, and limbs so removed and converted was largely in excess of the quantity for which defendants have made payment to plaintiffs; that the only sum paid to plaintiffs by defendants for the timber, etc., removed from said land, as aforesaid, was the sum of $2,056.65; that, by reason of the failure of defendants to pay for the excess timber cut and converted by them, for which they have not paid, plaintiffs have been damaged in the sum of $5,000.

They alleged that defendants became indebted and liable to pay plaintiffs $18,000 for the minimum of 3,000,000 feet of live oak which they agreed and bound themselves to cut from plaintiffs' land during the two years in which the contract should continue in force, less the sum of $2,056.65, leaving a balance of $15,-443.35. They alleged that defendants failed to cut the pin oak and ash timber on plaintiffs'

land, as by the contract they obligated themselves to do, to plaintiffs' damage in the sum of $5,000; such sum being the amount they would have received for such timber at the price named in the contract. They also allege: "That under and by the terms of said contract defendants agreed and bound themselves to cut all live oak trees from 12 inches in diameter or up, of standard quality, clean from the place of beginning; that defendants failed and refused to cut all live oak trees from 12 inches in diameter and up, of standard quality, cut by them from plaintiffs said land, clean from the place of beginning, and that by reason thereof defendants damaged plaintiffs and became justly and legally liable and indebted to plaintiffs in the sum of Five Thousand ($5,000.00) Dollars."

They prayed for a full accounting and statement of all timber, limbs, and stumps cut by defendants from the land, that upon final hearing they may have judgment against defendants for the debts and damages due and owing by defendants to plaintiffs, as above set out, and for costs of suit.

On the 25th day of August, 1919, defendant B. L. Waggoman filed his plea of privilege to be sued in the county of his residence.

On September 19, 1919, plaintiffs filed their controverting answer to defendant's plea of privilege, wherein they recite allegations made in their petition setting up the provisions of the contract and the several items of damage claimed by them, together with their allegation of a breach by defendants of the obligations assumed by them under the items of the contract. They then averred as follows:

"That this cause of action by plaintiffs against defendants is in part for damages against defendants for their failure to perform their written obligations performable in Brazoria County, Texas, contained in said paragraph two of said contract in writing, and that plaintiffs' cause of action against defendants in this suit is also in part for damages against defendants for their failure to perform said obligation in writing performable in Brazoria County, Texas, contained in said third paragraph in said contract in writing so executed by defendants to plaintiffs, and that plaintiffs' cause of action against defendants in this suit is also in part for the recovery of the amount of money due and owing by defendants to plaintiffs on account of the breach by defendants of their said obligation in writing to cut said minimum of 1,500,000 feet of live oak timber from said land during each of said years of said contract.

"Wherefore, plaintiffs say that this court has venue of this suit, and that the plea of privilege of said defendant B. L. Waggoman should be by the court overruled and denied, and plaintiffs pray that the same be overruled and denied, and that the venue of this suit be not changed to Tarrant County, Texas."

The court sustained the controverting answer and overruled defendant's plea of privilege. Defendant Waggoman has appealed.

Appellant insists that the cause of action pleaded by plaintiffs is one for damages for breach of contract for the purchase of timber located in Brazoria county, Tex., at prices designated in the contract, with no place of payment fixed or provided by such contract; that the defendant B. L. Waggoman did not contract in writing to perform an obligation in Brazoria county, Tex., within the meaning of subdivision 5 of article 1995, Revised Civil Statutes of 1925, authorizing a suit against him in any county other than the county of his residence; and that no exception to exclusive venue in the county of one's residence provided by law exists in this cause; and that he is entitled to have this suit transferred to the district court of Tarrant county, Tex.

We think appellant's contention should be sustained. We construe the contract, for the breach of which this suit is brought, to be clearly one of sale and purchase of timber, and the suit one to recover damages for the failure of appellants to take and pay for all the timber, limbs, and stumps from appellees' land situated in Brazoria county, Tex., described in the contract. There is nothing in the provisions of the contract indicating that by it the parties thereto intended that appellants should be bound thereby to clear the land or any part thereof so that it might be used for agricultural purposes, as suggested by appellees, but, to the contrary, it appears therefrom that no such intention existed in the minds of the contracting parties at the time of the execution of the contract, for it provided that only timber of 12 inches in diameter and up should be removed, thus leaving unremoved all timber under such dimensions, which, within the common knowledge of every one, exists in considerable quantities upon timbered tracts of land as is here involved.

If appellees' suit in Brazoria county can be maintained over the plea of privilege of appellant, it can be maintained only upon appellees' showing that appellants by the provision of the contract had obligated themselves to remove the timber sold "clean from the place of beginning," and that they failed so to do, and that the leaving of a part of such timber behind them as they took the other part damaged appellees' land situated in Brazoria county.

It is clearly apparent that appellees have reached the conclusion that the contract on its face did not require appellants to cut and remove the timber purchased by them from the land "in order that same might be converted into farming land to bear revenue annually," for in their brief they say: "Would it take a very great stretch of the imagination to suppose that the appellees also had in mind the

354

cutting and removing of the timber from fertile Brazos River Bottom land in order that same might be converted into farming land." They do not even suggest that any such thought was in the minds of appellants.

If, however, such purpose was in the minds of both parties to the contract, there was no evidence produced upon the hearing of the appellees' controverting answer that all the timber of the dimensions named in the contract, purchased by appellants, had not been removed from the land "clean from the beginning."

As before suggested, before appellees would be entitled to maintain their suit in Brazoria county over the plea of privilege of appellant, they would be required not only to allege damage to their land by appellants in Brazoria county, but to make proof of such damage, and no such proof was made.

Outside the allegations that the contract required the removal of the timber "clean from the beginning," and that appellants had failed to remove such timber, and such failure damaged appellees' land, the suit as shown by the plaintiffs' petition was in all other respects, we think, clearly one for damages for breach of contract for the purchase of timber located in Brazoria county, at prices designated in the contract, with no place of payment being named or provided by the contract.

■ The mere facts that the contract entailed upon appellants the duty to take the timber from the land, which is in Brazoria county, and to pay for all of it, and that they made payment for the part taken in Brazoria county, did not make such contract one requiring performance in such county within the meaning of the exception to the venue statute relied upon by appellees, nor one by which appellants promised to pay in Brazoria county.

The cutting and removing of the timber was simply descriptive of the manner of taking possession and consummating the contract for the sale of the timber. Suppose appellees had timber lying upon their land in Brazoria county and appellants had entered into a contract in writing to purchase all of such timber and pay for the same at a stipulated price without stipulating any place of payment, and thereafter appellants took a part of such timber and paid for it but refused to take the remainder, could such contract, in the meaning of subdivision 5 of article 1995, Revised Civil Statutes of 1925, authorizing suits in the county where the contract was to be performed, be construed to be a contract performable in Brazoria county, merely because the timber would necessarily have to be removed from land in Brazoria county? We think not. Little v. Woodbridge, 1 White & W. Civ. Cas. Ct. App. § 152.

Having reached the conclusion that the contract, for the breach of which this suit is based, is not a contract in writing promising performance in Brazoria county within the meaning of the exception relied upon by appellees, and having found that there was no proof whatever that by the breach alleged appellees' land was damaged, we further conclude that the court erred in not sustaining appellant's plea of privilege. So concluding, the judgment of the trial court is reversed, and it is here ordered that all the papers in the cause be transferred to the court of Tarrant county, Tex., having jurisdiction thereof.

Reversed and rendered.